

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| **SCHOLASTIC, INC.,** | **WD77546** |
| **Appellant,** | **OPINION FILED:** |
| v. | **October 28, 2014** |
| **DAVID VILEY,** | |
| **Respondent.** | |

### LABOR AND INDUSTRIAL RELATIONS COMMISSION

**Before Division Four: Alok Ahuja, C.J. Presiding,
Joseph M. Ellis, and James Edward Welsh, JJ.**

Scholastic, Inc., appeals the decision of the Labor and Industrial Relations Commission awarding workers' compensation benefits to its employee, David Viley, for a knee injury that he suffered when he slipped and fell in the parking lot as he was leaving work. We affirm.

### Background

David Viley worked in the customer service call center at the Moberly location of Scholastic, Inc. ("Scholastic"). His regular work shift was from noon to 9:00 p.m. At the end of his shift on February 18, 2010, Viley walked outside to leave for the evening. As he walked across the adjacent parking lot headed for his vehicle, he slipped and fell on snow and ice, injuring his right knee. Viley ultimately required surgery on the knee.

Viley filed a claim for workers' compensation benefits, and Scholastic denied the claim. Prior to the hearing before an Administrative Law Judge ("ALJ"), the parties stipulated that the issues to be decided were whether the "extension of premises" provision applied and whether Viley's injury came from "a hazard or risk unrelated to the employment" to which he would have been "equally exposed" in his nonemployment life.[1]

Viley testified at the hearing that on the evening of his injury, he left the building, walked west along the sidewalk and across the roadway into the south parking lot, where he "always" parked. Viley stated that there had been an accumulation of snow and ice in the parking lot when he arrived at work that day and that the snow and ice was still present when he left that evening. Viley testified that the parking lot was poorly lit and had been plowed only in "pathways." Viley testified that he was walking on a "bladed area" near the entrance of the south lot when he slipped on the snow and ice and fell. According to Viley, his feet "went out" from underneath him, he fell back, and he landed on his knee. The next day, when Viley could not move his leg, he called his doctor. An MRI revealed a torn meniscus. Following surgery on his knee, Viley's doctor eventually released him to return to work.

Keith Porting, director of operations at Scholastic's Moberly plant, testified via deposition that his duties include maintaining the facility, budget, and operations. He explained that the site where Scholastic is located consists of one large main building surrounded by several small buildings and multiple parking areas. Porting stated that, at the time of Viley's accident, Scholastic was leasing the western portion of the building. A copy of the lease agreement ("Lease") between Scholastic and its landlord ("Landlord") was admitted at Porting's deposition.

---

[1]The parties also stipulated that Scholastic would owe $26,384.56 in medical bills and $2,139.20 in temporary total disability benefits if the claim were deemed compensable and that Viley sustained 15% permanent partial disability of the right knee, which equates to $7,334.40.

2

Porting's testimony was primarily aimed at establishing that Scholastic neither owned nor controlled the parking lot on which Viley fell.

The ALJ denied Viley's claim, finding his injury to be non-compensable under the Workers' Compensation Act ("Act"), § 287.010, *et seq*., RSMo.[2] On appeal, the Labor and Industrial Relations Commission disagreed and awarded compensation. The Commission found that because Scholastic controls the parking lot on which Viley fell, the injury was compensable under the "extended premises" provision of the Act. § 287.020.5. The Commission also found that Viley's injury arose out of a hazard or risk related to his employment to which he would not have been equally exposed in his normal nonemployment life. § 287.020.3(2).

**Standard of Review**

Our review of the Commission's decision is governed by article V, section 18, of the Missouri Constitution and section 287.495, RSMo Cum. Supp. 2013. Article V, section 18, provides for judicial review of the Commission's award to determine whether the decision is authorized by law and whether it is "supported by competent and substantial evidence upon the whole record." Under section 287.495, we must affirm unless the Commission acted in excess of its powers, the award was procured by fraud, the facts do not support the award, or insufficient competent evidence exists to warrant the making of the award. To determine whether there is sufficient competent and substantial evidence to support the award, we examine the evidence in the context of the whole record. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222-23 (Mo. banc 2003). We "defer to the commission on issues of fact, the credibility of the witnesses,

---

[2]Statutory references are to the Revised Statutes of Missouri (RSMo) 2000, as updated through the 2009 Cumulative Supplement, except where otherwise noted.

3

and the weight given to conflicting evidence." *Treasurer of State-Custodian of Second Injury Fund v. Witte*, 414 S.W.3d 455, 460 (Mo. banc 2013). We review issues of law *de novo*. *Id.*

## Point I

In Point I, Scholastic claims that the Commission erred in concluding that Viley's injury "arose out of and in the course of" his employment on the basis of the "extended premises" provision in section 287.020.5 of the Workers' Compensation Act, in that Scholastic did not "exude sufficient control" over the parking lot at issue, as required by that provision.

In 2005, the Missouri Legislature amended various aspects of the Workers' Compensation Act to limit its scope. *See Mo. Alliance for Retired Ams. v. Dep't of Labor and Indus. Relations*, 277 S.W.3d 670, 679 (Mo. banc 2009). Before 2005, the Act provided that an injury did not "arise out of and in the course of employment" unless the injury occurred "while [the worker] was engaged in or about the premises where [his] duties are being performed, or where [his] services require [his] presence as a part of such service." § 287.020.5, RSMo 2000. Based on this provision, the courts ultimately developed the "extension of premises" or "extended premises" doctrine as an exception to the general rule that "accidents occurring on the trip to or from work are not deemed to arise out of and in the course of employment." *See Hager v. Syberg's Westport*, 304 S.W.3d 771, 775 (Mo. App. 2010).[3] Under the law as it existed prior to 2005, if the judicially created "extension of premises" doctrine was found to apply, then the injury was deemed to have occurred on the employer's premises, thereby satisfying both the

---

[3]The "extension of premises" doctrine provided that an injury incurred "while going to or from work" is compensable if: (1) the accident that caused the injury occurred on premises that are "owned or controlled by the employer" or "have been so appropriated by the employer or so situate, designed and used by the employer and his employees incidental to their work as to make them, for all practical intents and purposes, a part and parcel of the employer's premises and operation," and (2) "that portion of such premises is a part of the customary, expressly or impliedly approved, permitted, usual and acceptable route or means employed by workers to get to and depart from their places of labor and is being used for such purpose at the time of injury." *Wells v. Brown*, 33 S.W.3d 190, 192 (Mo. banc 2000) (citing *Kunce v. Junge Baking Co.*, 432 S.W.2d 602, 607 (Mo. App. 1968)).

"premises" requirement of former section 287.020.5, and the "in the course of employment" test. *See Wells v. Brown*, 33 S.W.3d 190, 192 (Mo. banc 2000).[4]

In 2005, section 287.020.5 was rewritten. It now provides, in pertinent part, that:

> The extension of premises doctrine is abrogated **to the extent** it extends liability for accidents that occur on property **not owned or controlled by the employer** even if the accident occurs on customary, approved, permitted, usual or accepted routes used by the employee to get to and from their place of employment.

§ 287.020.5 (emphasis added). Thus, the amendment effectively codified a portion of the judicially created "extension of premises" doctrine.

Following the mandate in section 287.800, which was amended in 2005 to require the provisions of the Workers' Compensation Act to be "strictly" construed, we must construe the amended version of section 287.020.5 as it is plainly written. *See Allcorn v. Tap Enter., Inc.*, 277 S.W.3d 823, 829 (Mo. App. 2009). Pursuant to the plain language of section 287.020.5, the extended premises doctrine is not totally eliminated but is now limited to situations where the employer **owns or controls** the area where the accident occurs. The parties agree that Scholastic does not own the parking lot where Viley's accident occurred. Thus, the issue to be decided as to the "extended premises" provision is whether Scholastic "controlled" the parking lot.

Scholastic heavily relies on *Hager*, in which the claimant was injured after slipping on ice in the parking lot while walking from his place of employment to his car. 304 S.W.3d at 772. In *Hager*, a lease gave the employer "the 'right to use'" parking facilities which were shared with occupants and guests of other premises. *Id.* at 776. In deciding whether the extended premises provision in section 287.020.5 applied, the *Hager* Court sought to determine whether the employer **controlled** the parking lot. *Id.* The court defined "control" as "1. To exercise power or

---

[4]*Superseded by statute*, as stated in *Hager*, 304 S.W.3d at 775.

influence over. . . . 2. To regulate or govern. . . . 3. To have a controlling interest in." *Id.* (quoting BLACK'S LAW DICTIONARY (8th ed. 2004)). Based on this definition and the provisions of the employer's lease,[5] the court determined that the employer did not "control" the parking lot within the meaning of the statute because it did not "exercise power or influence" over the parking lot, nor did it "regulate or govern" the parking lot. *Id.* at 776-77.

Scholastic's Lease distinguishes this case from *Hager*.[6] In this case, unlike the lease in *Hager*, Scholastic's Lease includes a provision granting Scholastic "***exclusive use*** for parking of Tenant's Automobiles" in both the north and south parking lots.[7] "Exclusive" is defined as "excluding or having power to exclude" and "limiting or limited to possession, control, or use by a single individual or group." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 404 (10th ed. 1994). As a result of this "exclusive use" provision, the north and south parking lots are not

---

[5]Under the lease in *Hager*, the landlord was in charge of managing and maintaining the premises and reserved the right to make changes or alterations to the premises designed for common use among tenants, and the landlord had the power to "make reasonable rules and regulations pertaining to the use of such parking areas by [Employer], its guests, invitees, and suppliers." 304 S.W.3d at 776-77.

[6]Although Scholastic's Lease contains a similar provision as that in *Hager*, that provision is applicable only to common areas. It provides:

> Notwithstanding anything set out in this Lease to the contrary, it is agreed that (i) all Common Facilities shall be subject to the exclusive control and management of the Landlord, and Landlord shall have the right at any time . . . to change the size, area, level, location and arrangement of the entrances, access roads, parking areas and other Common Facilities . . . and (iii) Landlord shall have the right to do and perform such other acts in and to the Common Facilities as the Landlord shall determine to be advisable[.]

"Common Facilities" is defined in the Lease as "all areas, space, equipment and special services in or serving the Commercial Complex, ***provided for the common or joint use*** and benefit of Landlord, the occupants of the Commercial Complex and their employees, agents, servants, customers and other invitees, as determined by Landlord from time to time." (Emphasis added.)

[7]In *Hager*, "[t]he lease merely granted the 'right to use . . . the parking facilities in accordance with the provisions of this lease.'" 304 S.W.3d at 776. Unlike this case, nothing in *Hager* indicates that the employer was granted "exclusive use" of the parking lot.

6

"Common Facilities," by definition, because they are not "provided for the common or joint use" of the employer, landlord and other tenants.

Although there was evidence that employees of other tenants and visitors to the complex sometimes used the north and south parking lots, the record reflects that Scholastic had exercised "control" over those lots. For example, Scholastic had on various occasions ejected non-employees from the lots, and Scholastic routinely contacted Landlord to request maintenance for the lots -- a service that Landlord was obligated to perform under the Lease -- and on occasion had expressed displeasure with the snowy and icy condition of the lots. Also, Scholastic's safety committee members were required to report any incidents of unsafe driving on the parking lots to a Scholastic supervisor. On the facts as found by the Commission, the Commission was free to determine that Scholastic was authorized to, and did, exercise power over, regulate, and govern the lots. Because Scholastic exercised "control" over the south lot where Viley's injury occurred, it is deemed to be Scholastic's premises for purposes of the "extended premises" provision in section 287.020.5.

The Lease granting Scholastic "exclusive use" of the parking lots is sufficient to establish control for purposes of the extended premises provision. Thus, the Commission did not err in relying upon the *extended premises* provision to find that Viley's injury arose out of and in the course of his employment. Point I is denied.

## Point II

In Point II, Scholastic argues that the Commission erred in finding that Viley's injury "arose out of and in the course of his employment" because the injury did "not come from a hazard or risk unrelated to the employment to which [Viley] would have been equally exposed outside of and unrelated to the employment in normal nonemployment life." § 287.020.3(2)(b).

7

Scholastic asserts that Viley faced equal risk of injury walking across identical parking lots during his nonemployment life.

Under section 287.120.1, "[e]very employer subject to [the Workers' Compensation Act] shall be liable, irrespective of negligence, to furnish compensation . . . for personal ***injury*** . . . of the employee by accident ***arising out of and in the course of*** the employee's employment[.]" (Emphasis added.) Section 287.020.3(2) governs whether an injury arises out of and in the course of employment. As amended in 2005, that statute provides that "[a]n injury shall be deemed to ***arise out of and in the course of*** the employment ***only if***:"

> (a) It is reasonably apparent, upon consideration of all the circumstances, that the accident is the prevailing factor in causing the injury; and
>
> (b) It does ***not*** come from a ***hazard or risk unrelated to the employment*** to which ***workers would have been equally exposed outside of*** and unrelated to the ***employment*** in normal nonemployment life.

§ 287.020.3(2) (emphasis added). Scholastic does not contest that the February 18, 2010 accident was the "prevailing factor" in causing Viley's injury.[8] Thus, the issue is limited to the construction and application of section 287.020.3(2)(b). Under paragraph (b), if Viley's injury did ***not*** come from a hazard or risk unrelated to the employment to which he would have been equally exposed outside of, and unrelated to, the employment in his nonemployment life, then his injury arose out of and in the course of employment. *See* § 287.020.3(2)(b).

Our Supreme Court addressed this issue in *Johme v. St. John's Mercy Healthcare*, 366 S.W.3d 504 (Mo. banc 2012). In *Johme*, the claimant, a billing representative, was making coffee in the office kitchen when she turned and slipped off of her sandal, injuring her right hip. *Id*. at 505-06. The Court denied compensation, finding that the injury did not "arise out of" the

---

[8]"Prevailing factor" is defined as "the primary factor, in relation to any other factor, causing both the resulting medical condition and disability." § 287.020.3(1).

employment. *Id*. at 512. The Court instructed that the "equal exposure" analysis should focus not on the task that the employee was performing (*i.e*., making coffee), but rather on the underlying risk factor that caused the injury to occur. *Id*. at 511. The Court explained that the focus should have been on the employee's act of turning, twisting her ankle, and falling off of her shoe. *Id*. *See also Miller v. Mo. Highway & Transp. Comm*., 287 S.W.3d 671, 672-74 (Mo. banc 2009) (held that the worker's injury did not "arise out of" the employment where the claimant, a construction worker, was walking to his truck at a jobsite to get material for a job when his knee popped and began to hurt but there was no evidence that the condition of the road, his work clothing, or anything job-related caused the injury).

"Together, *Miller* and *Johme* stand for the proposition that an unexplained injury is not compensable merely because the injury occurred at work." *Dorris v. Stoddard County*, 436 S.W.3d 586, 592 (Mo. App. 2014). Citing *Miller* and *Johme*, the court in *Pope v. Gateway to the West Harley Davidson* explained that "we consider whether [the claimant] was injured *because* he was at work as opposed to becoming injured merely *while* he was at work." 404 S.W.3d 315, 320 (Mo. App. 2012).

In deciding this issue in Viley's favor, the Commission cited *Duever v. All Outdoors, Inc*., 371 S.W.3d 863 (Mo. App. 2012). There, the claimant was the operator of a company that provided snow and ice removal. *Id*. at 865. The claimant was injured when he slipped on ice in the parking lot on his way back to the office after a safety meeting with employees to discuss maintenance of tail lights on company trailers. *Id.* The Commission awarded compensation on the basis that Duever fell on ice while in the course of his employment. *Id.* The employer appealed, arguing that slipping on ice was a risk to which the employee was equally exposed in his nonworking life, and, thus, the injury was not compensable. *Id*. at 867. The appellate court

9

disagreed and affirmed the Commission's award of compensation. *Id.* at 867-68. In affirming the award, the *Duever* Court stated that the facts before it were "clearly distinguishable" from those in *Miller* and *Johme* because Duever "sustained an injury due to an unsafe condition (the ice itself)," the claimant was in the icy parking lot "as a function of his employment," and, therefore, he was exposed to the risk of slipping on the ice because of his employment. *Id.*

Here, the Commission found that the circumstances surrounding Viley's injury are "***indistinguishable*** from the circumstances of *Duever*" as to the equal exposure issue. We agree. In this case, as in *Duever*, Viley's injury was caused by an unsafe condition on the ground at Scholastic's worksite (albeit extended premises), *i.e.*, an ice-covered parking lot. Both Duever and Viley were injured by slipping and falling on an icy parking lot *because* they were at work.

Scholastic asserts that Viley's injury did not "arise out of his employment" because he was "equally exposed" to icy conditions in his nonemployment life. Recently, however, in *Dorris*, the Southern District of this Court explained that under the Act's strict construction, section 287.020.3(2)(b)'s "hazard or risk" cannot be identified so generally. *See* 436 S.W.3d at 591-92. In *Dorris*, the claimant was injured when she tripped on a crack in the street while walking back to her office after completing a work-related task offsite. *Id.* at 587. On appeal, the employer argued that the Commission erred in awarding benefits because the claimant was equally exposed to the risk of cracks in a street in her nonemployment life. *Id.* at 589. The *Dorris* Court rejected that argument, explaining that, by dismissing a similar argument in *Duever*, the court had "implicitly determined [that] the hazard at issue was *not* the hazard of slipping on ice in general, but rather the hazard of slipping on *that* ice in *that particular* parking lot." *Id.* at 592 (emphasis added). Identifying the "specific risk or hazard" the claimant was exposed to as "cracks in [the] particular street" she tripped on, and finding that "[t]here [was] no

10

evidence in the record that [the] [c]laimant had any exposure to [that] particular hazard during her nonemployment life," the *Dorris* Court held that "the record could not support a conclusion by the Commission that [the claimant] was equally exposed to that hazard in her nonemployment life, as urged by employer." *Id.*

Relying on *Duever* and *Dorris*, the Commission focused on the south lot where this injury occurred.[9] The Commission found that the risk or hazard was not snow and ice in general throughout the community, but was the condition of that specific parking lot, and Viley's work-related exposure to that hazardous condition. The Commission noted that the evidence established that Viley "was exposed to the hazard of slipping on the ice on employer's extended south parking lot premises only while he was coming to work or going from work" and there was "no evidence in the record to suggest that [he] was exposed to the hazard of falling on ice in the south lot . . . in nonemployment life."

The Commission did not err in so finding. Even assuming *arguendo* that Viley was equally exposed to the hazard of slipping and falling on *an* icy parking lot in his nonemployment life, his injury still arose out of his employment because there is nothing in the record to support a conclusion that he was equally exposed to the hazard of slipping on the icy parking lot at *that particular* work site in his nonemployment life.

Based on the foregoing, we find that the Commission did not err in finding that Viley's injury "arose out of and in the course of" his employment and, thus, was compensable under the Workers' Compensation Act. Point II is denied.

---

[9]Scholastic again relies on *Hager*, 304 S.W.3d at 775, where the court found that the claimant's injury did not arise out of and in the course of employment under section 287.020.3(2)(b). We note, however, that *Hager* was decided before *Johme*, *Duever*, and *Dorris*, does not distinguish *Miller*, and does not examine whether the employee was exposed to the risk of that *particular* icy parking lot in his employment versus nonemployment life.

11

## Conclusion

In sum, the Commission's determination that Viley fell due to an unsafe condition on the employer's extended premises, and that his injury came from a hazard related to his employment, was supported by sufficient competent and substantial evidence.  Thus, the Commission did not err in concluding that Viley's injury arose out of and in the course of his employment and in awarding compensation.  We affirm the Commission's decision.

/s/JAMES EDWARD WELSH
James Edward Welsh, Judge

All concur.

12