

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| **LINCOLN UNIVERSITY,** | ) | |
| | ) | |
| **Appellant,** | ) | **WD79003** |
| | ) | |
| **v.** | ) | **OPINION FILED:  April 12, 2016** |
| | ) | |
| **KATHY NARENS,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**Appeal from the Labor and Industrial Relations Commission**

Before Division Two:  Cynthia L. Martin, Presiding Judge, Mark D. Pfeiffer, Judge and
Karen King Mitchell, Judge

Lincoln University ("Lincoln") appeals the decision of the Labor and Industrial Relations Commission ("Commission") awarding workers' compensation benefits to its employee, Kathy Narens ("Narens"), for an ankle injury she suffered after stepping off the steep edge of a sidewalk while leaving work.  Lincoln argues that the Commission erred (1) by failing to conclude that the risk source of Narens's injury was walking; (2) in awarding Narens benefits even though her injury occurred after work; and (3) because the award of benefits was not supported by competent substantial evidence.  Finding no error, we affirm.

**Factual and Procedural Background**

Narens has been employed full time at Lincoln since 2009. Her normal working hours are from 7:45 a.m. to 4:45 p.m. At the time of her injury, Narens was an administrative assistant with an office in the Dawson Annex building on Lincoln's campus.

On April 11, 2012, Narens left Dawson Annex at the end of her work day and started walking to her car that was parked in a parking lot on Lincoln's campus. Narens walked down a ramp and turned right onto a sidewalk that led to the parking lot. Bumpers from cars parked on the left edge of the sidewalk made the sidewalk narrow. Narens said students were walking toward her, so she stepped to the right. When she stepped to the right, her right foot landed on a steep edge of the sidewalk and turned. As her right ankle turned, Narens overcompensated to her left, fell, and broke her left ankle. Narens filed a claim for workers' compensation benefits on June 4, 2012.

During a hearing before an Administrative Law Judge ("ALJ"), Narens and Lincoln each submitted photographs of the sidewalk where Narens's injury occurred. The photographs depict car bumpers overhanging the left side of the sidewalk, a close up of a portion of the right side of the sidewalk that shows an edge higher than the ground adjacent to it, and a worn path along the right edge of the sidewalk. The photographs also show a blue trash can sitting on a concrete slab along the right side of the sidewalk. The worn path along the right side of the sidewalk runs before and after the blue trash can.

Narens testified that she stepped on the right edge of the sidewalk just after passing the blue trash can. Narens also testified that she was walking with her supervisor in August 2013 on the same sidewalk when the supervisor stepped on the edge of the sidewalk and fell, injuring her knee.

The ALJ awarded Narens workers' compensation benefits in a written decision dated March 25, 2015 ("ALJ Award"). The ALJ Award included the factual finding that:

> [p]hotos of the location where . . . Narens fell indicate that there is a difference in the height of the ground between the sidewalk and the grassy area next to the sidewalk and that the sidewalk is higher than the grassy area adjacent to it. Moreover, the photos reflect a worn area in the grass adjacent to the sidewalk where . . . Narens fell, which looks like a path that has been cleared by frequent use as a walkway alongside the sidewalk.

The ALJ Award found that Narens "sustained an accident arising out of and in the course of employment when she fell on a crowded sidewalk after stepping down into the grass and then falling onto her left ankle" and concluded that "[t]here is nothing to suggest that the cause of the fall was anything other than the condition of the crowded sidewalk and the lower level adjacent ground which . . . Narens was in effect trying to straddle when she fell injuring her left ankle."

Lincoln appealed the ALJ Award to the Commission. The Commission affirmed the ALJ Award in a supplemental opinion dated September 1, 2015 ("Commission Award"). The supplemental opinion found that Narens's injury "unquestionably [occurred] in the course of her employment . . . because she was on a premises owned and controlled by [Lincoln]." The supplemental opinion also found that the "risk or hazard from which [Narens'] injuries came was traversing the crowded campus sidewalk

3

with its steep drop-off." The Commission thus concluded that Narens's "daily exposure to this location and this condition of the sidewalk involved an increased risk of suffering an injury-producing fall . . . to which [Narens] was not equally exposed in her normal nonemployment life."

Lincoln timely appealed.

## Standard of Review

"We . . . review the findings and award of the Commission rather than those of the ALJ, to the extent that it departs from the ALJ's ruling." *Small v. Red Simpson, Inc.*, WD 78289, 2015 WL 7252997, at *3 (Mo. App. W.D. Nov. 17, 2015). "To the extent that the Commission affirms and adopts the ALJ's findings and conclusions, we review the ALJ's findings and conclusions." *Id.* We may modify, reverse, remand for rehearing, or set aside the award of the Commission only if we determine that the Commission acted without or in excess of its powers, that the award was procured by fraud, that the facts found by the Commission do not support the award, or that there was not sufficient competent evidence to warrant making the award. Section 287.495.1.[1]

"We review the whole record to determine whether there is sufficient competent and substantial evidence to support the award or if the award is contrary to the overwhelming weight of the evidence." *Gleason v. Treasurer of State of Missouri-Custodian of Second Injury Fund*, 455 S.W.3d 494, 497 (Mo. App. W.D. 2015) (internal citation omitted). "This Court defers to the Commission's factual findings and recognizes

---

[1]All statutory references to Chapter 287 are to the version enacted by the legislature in 2005 unless otherwise indicated.

that it is the Commission's function to determine credibility of witnesses." *Riley v. City of Liberty*, 404 S.W.3d 434, 439 (Mo. App. W.D. 2013) (quoting *Hornbeck v. Spectra Painting, Inc.*, 370 S.W.3d 624, 629 (Mo. banc 2012)). "This Court may not substitute its judgment on the evidence, and when the evidence before an administrative body would warrant either of two opposed findings, the reviewing court is bound by the administrative determination, and it is irrelevant that there is supportive evidence for the contrary finding." *Riley*, 404 S.W.3d at 439. "The Commission's determinations of law, however, are reviewed independently." *Gleason*, 455 S.W.3d at 497.

## Point One

In its first point, Lincoln argues that the Commission erred by finding that Narens's injury arose out of and in the course of her employment because it did not conduct a proper risk source analysis. Lincoln claims that the proper risk source of Narens's injury was walking, which renders her injury not compensable because Narens is equally exposed to the risk of walking outside of work.

Under the Missouri Workers' Compensation Law ("Act"), an employer "shall be liable, irrespective of negligence, to furnish compensation under the provisions of [the Act] for personal injury . . . of the employee by accident . . . arising out of and in the course of the employee's employment." Section 287.120.1.

Section 287.020.3(2) governs whether an injury arises out of and in the course of employment and provides:

> (2) An injury shall be deemed to arise out of and in the course of the employment only if:

5

(a) It is reasonably apparent, upon consideration of all the circumstances, that the accident is the prevailing factor in causing the injury; and

(b) It does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life.

"For an injury to be deemed to arise out of and in the course of the employment under section 287.020.3(2)(b), the claimant employee must show a causal connection between the injury at issue and the employee's work activity." *Johme v. St. John's Mercy Healthcare*, 366 S.W.3d 504, 510 (Mo. banc 2012).

Lincoln limits the argument in its first point on appeal to the application of section 287.020.3(2)(b). Lincoln argues that the Commission erred by determining that "the risk or hazard from which [Narens'] injuries came was traversing the crowded campus sidewalk with its steep drop-off," when the risk source of her injury was simply walking. Lincoln asserts that the Commission's application of section 287.020.3(2)(b) runs afoul of the holdings in *Miller v. Missouri Highway & Transportation Commission*, 287 S.W.3d 671 (Mo. banc 2009) and *Johme*.

In *Miller*, the Supreme Court "considered whether workers' compensation was payable to an employee who was injured when his knee popped and began to hurt while he was walking briskly toward a truck containing repair material that was needed for his job as a road crew worker." *Johme*, 366 S.W.3d at 510 (citing *Miller*, 287 S.W.3d at 672). *Miller* concluded that the employee's injury did not arise out of and in the course of employment, explaining:

An injury will not be deemed to arise out of employment if it merely happened to occur while working but work was not a prevailing factor and

6

the risk involved—here, walking—is one to which the worker would have been exposed equally in normal non-employment life. ***The injury here did not occur because Mr. Miller fell due to some condition of his employment. He does not allege that his injuries were worsened due to some condition of his employment or due to being in an unsafe location due to his employment.*** He was walking on an even road surface when his knee happened to pop. Nothing about work caused it to do so. The injury arose during the course of employment, but did not arise out of employment.

[T]he injury is not compensable, as there is no causal connection of the work activity to the injury other than the fact of its occurrence while at work.

*Miller*, 287 S.W.3d at 674 (emphasis added).

In *Johme*, the Supreme Court considered whether workers' compensation was payable to an employee who, after making a pot of coffee in an office kitchen, "turned and twisted her right ankle, which caused her right foot to slip off of her sandal, and . . . fell onto her right side and then onto her back." *Johme*, 366 S.W.3d at 507. *Johme* addressed *Miller*, specifically noting:

*Miller*'s focus was not on what the employee was doing when he popped his knee—he was walking to a truck to obtain materials for his work—but rather focused on whether the risk source of his injury—walking—was a risk to which he was exposed equally in his normal nonemployment life. *Miller* instructs that it is not enough that an employee's injury occurs while doing something related to or incidental to the employee's work; rather, the employee's injury is only compensable if ***it is shown to have resulted from a hazard or risk to which the employee would not be equally exposed*** in normal nonemployment life.

*Johme*, 366 S.W.3d at 511 (internal quotations omitted) (emphasis added). *Johme* declined to find that the employee suffered a compensable injury, concluding that "no evidence showed that [the employee] was not equally exposed to the cause of her injury-- turning, twisting her ankle, or falling off her shoe--while in her workplace making coffee

7

than she would have been when she was outside of her workplace in her normal nonemployment life." *Id.* at 511 (internal quotation omitted).

*Miller* and *Johme* are plainly inapplicable to this case. In stark contrast to both cases, the Commission found that Narens's injury was the result of an unsafe condition that Narens was exposed to due to her employment. Nonetheless, Lincoln argues that the holdings of *Miller* and *Johme* stand for the proposition that a reviewing court cannot look at the *particular activity* surrounding an injury when determining whether an employee's injury comes from a hazard or risk unrelated to the employment to which an employee would have been equally exposed in normal nonemployment life. In other words, Lincoln asserts that the Commission erred by determining that the risk source of Narens's injury was walking along the particular campus sidewalk with its steep edge, and instead should have determined that the risk source of Narens's injury was simply walking. Lincoln's argument misreads the holdings of *Miller* and *Johme* and fails to account for subsequent cases which have clarified the concept of risk source in connection with the application of section 287.020.3(2)(b).

In *Gleason*, we addressed *Miller* and *Johme* and clarified that "[t]he 'causal connection' standard announced in *Miller* and further addressed in *Johme* . . . first requires identification of the risk source of a claimant's injury, that is, identification of the *activity that caused the injury,* and then requires a comparison of that risk source or activity to normal nonemployment life." *Gleason*, 455 S.W.3d at 499 (emphasis in original). "In *Miller,* the 'risk source,' that is to say, the activity that caused the injury, was 'walking on an even road surface.'" *Id.* (quoting *Miller*, 287 S.W.3d at 674). "In

8

*Johme,* the 'risk source,' that is to say, the activity that caused the injury, was 'turning and twisting [an] ankle and falling off [the claimant's] shoe.'" *Gleason*, 455 S.W.3d at 500 (quoting *Johme*, 366 S.W.3d at 511). Applied to the circumstances before us, we thus found in *Gleason* that an employee injured after falling from a railcar was entitled to benefits because "the 'risk source,' that is the activity which caused Gleason's injuries, was falling from a railcar 20 to 25 feet above the ground" which was "not a risk source to which Gleason would have been exposed in his 'normal nonemployment life.'" *Id*.

Our holding in *Gleason* is in accord with other cases decided after *Miller* and *Johme* which have similarly applied the concept of risk source to determine whether an injury is deemed to arise out of and in the course of employment under section 287.020.3(2)(b). *See Scholastic, Inc. v. Viley*, 452 S.W.3d 680, 687 (Mo. App. W.D. 2014) ("[e]ven assuming *arguendo* that Viley was equally exposed to the hazard of slipping and falling on *an* icy parking lot in his nonemployment life, his injury still arose out of his employment because there is nothing in the record to support a conclusion that he was equally exposed to the hazard of slipping on the icy parking lot at *that particular* work site in his nonemployment life"); *Dorris v. Stoddard County*, 436 S.W.3d 586, 592 (Mo. App. S.D. 2014) ("[t]here is no evidence in the record that Claimant had any exposure to this particular hazard during her nonemployment life and therefore, the record could not support a conclusion by the Commission that she was equally exposed to that hazard in her nonemployment life"); *Young v. Boone Elec. Coop.*, 462 S.W.3d 783, 790 (Mo. App. W.D. 2015) (employee's "injury . . . arose out of his employment because there is nothing in the record to support a conclusion that he was equally exposed to the

9

hazard of slipping on frozen dirt clods at that particular work site in his nonemployment life"); *Missouri Dep't of Soc. Services v. Beem*, 478 S.W.3d 461 (Mo. App. W.D. 2015) (the risk source of employee's injury was slipping on ice in a parking lot controlled by her employer because her employment "exposed her to that particular hazard"); *Wright v. Treasurer of Missouri as Custodian of Second Injury Fund*, ED 102892, 2015 WL 6926992, at *6 (Mo. App. E.D. Nov. 10, 2015) (employee "did not suffer a general injury from the act of sitting itself . . . but a particular injury because the chair he sat on collapsed" and "[i]t was this particular chair that carried the risk of collapse").[2]

We thus reject Lincoln's erroneous construction of *Miller* and *Johme*. Neither *Miller* nor *Johme* found that the employee's injuries were not compensable because the risk source was walking. Rather, each found that the risk source--walking *on an even road surface* in *Miller*, and turning, twisting an ankle, and *falling off a shoe* in *Johme*-- were risk sources the employee would have been equally exposed to outside of the workplace in normal nonemployment life. *Miller*, 287 S.W.3d at 674; *Johme*, 366 S.W.3d at 511. Applying the same logic here, though Narens was walking when she was injured, walking was not the risk source of her injury. Stepping off the steep edge of a

---

[2]Lincoln notes that in *Hager v. Syberg's Westport*, 304 S.W.3d 771, 775 (Mo. App. E.D. 2010), the Eastern District did not look at the particular activity that caused an employee's injury when it denied workers' compensation benefits, concluding that the employee "could have slipped and fallen on an ice-covered parking lot anywhere, and thus, his injury comes from a hazard or risk unrelated to his employment." Lincoln argues that *Hager's* approach is in line with the holdings of *Miller* and *Johme* and urges us to adopt that approach here while disregarding the numerous cases cited above that hold a court should identify the particular activity that causes an employee's injury when applying section 287.020.3(2)(b). We decline to do so. First, *Hager* did not address *Miller* and was decided before *Johme*, which itself further clarified what is necessary when conducting the proper risk source analysis under section 287.020.3(2)(b). Second, the Eastern District moved away from *Hager's* approach in *Wright* when it determined that "[u]nder strict construction, Section 287.020.3(2)(b)'s hazard or risk cannot be identified so generally." *Wright*, 2015 WL 6926992, at *6 (internal quotation omitted). In short, we will not disregard the overwhelming precedent that holds a court should look at the particular activity that caused an employee's injury when conducting the risk source analysis under section 287.020.3(2)(b).

sidewalk was the risk source of her injury. Stated another way, Narens was not injured because she was walking. She was injured because while walking, she encountered a steep drop off on the sidewalk--a risk source that she would not have been equally exposed to outside of the workplace in normal nonemployment life.

Here, the Commission found that "the risk or hazard from which [Narens'] injuries came was traversing the crowded campus sidewalk with its steep drop-off." The Commission clearly identified the risk source of Narens's injury by looking *at the particular activity* that caused the injury--walking along a sidewalk with its steep edge on Lincoln's campus--and comparing *that particular activity* to Narens's normal nonemployment life in order to determine whether Narens's injury arose out of and in the course of her employment, all in accordance with *Miller*, *Johme*, and the subsequent cases cited above. The Commission committed no error in reaching the conclusion that Narens's injury arose out of and in the course of employment pursuant to section 287.020.3(2)(b).

Point one is denied.

## Point Two

In its second point, Lincoln argues that the Commission erred by finding that Narens's injury arose out of and in the course of her employment pursuant to section 287.020.3(2) because the injury did not have a causal connection to a work activity. Lincoln claims that Narens's injury is not compensable because she was leaving work for the day and was not doing anything work related when the injury occurred.

11

Before 2005, section 287.020.5[3] provided that injuries did not arise out of and in the course of employment unless employees were "engaged in or about the premises where their duties [were] being performed, or where their services require[d] their presence as a part of such service." In construing this provision, courts adopted the "extended premises" or "extension of premises" doctrine "as an exception to the general rule of noncompensability of injuries occurring on the trip to or from work." *Beem*, 478 S.W.3d 461. The doctrine provided that an injury sustained while going to or from work would be compensable if:

> (1) the accident that caused the injury occurred on premises that are "owned or controlled by the employer" or "have been so appropriated by the employer or so situate[d], designed and used by the employer and his employees incidental to their work as to make them, for all practical intents and purposes, a part and parcel of the employer's premises and operation," and (2) "that portion of such premises is a part of the customary, expressly or impliedly approved, permitted, usual and acceptable route or means employed by workers to get to and depart from their places of labor and is being used for such purpose at the time of injury."

*Viley*, 452 S.W.3d at 683 n.3 (quoting *Wells v. Brown*, 33 S.W.3d 190, 192 (Mo. banc 2000)).

> Section 287.020.5 was amended in 2005 to read as follows:

> Injuries sustained in company-owned or subsidized automobiles in accidents that occur while traveling from the employee's home to the employer's principal place of business or from the employer's principal place of business to the employee's home are not compensable. **The extension of premises doctrine is abrogated to the extent it extends liability for accidents that occur on property not owned or controlled by the employer even if the accident occurs on customary, approved, permitted, usual or accepted routes used by the employee to get to and from their place of employment.**

---

[3]RSMo 2000.

12

(Emphasis added). Thus, the extension of premises doctrine "is not totally eliminated but is now limited to situations where the employer *owns or controls* the area where the accident occurs." *Viley*, 452 S.W.3d 684 (emphasis in original). "Because extension of premises cases involve injuries sustained before or after the actual performance of job duties, the legislature clearly contemplated and accepted compensability of injuries sustained as a result of work-related risks even though [an] employee was not engaged in the performance of job duties at the time (e.g. going to or coming from [an] employer's worksite)." *Beem*, 478 S.W.3d 461.

Here, it is undisputed that Narens was on the Lincoln campus for work. It is undisputed that Narens was leaving work at the end of her regular work day when the injury occurred. It is undisputed that Lincoln owned and controlled the sidewalk where Narens was injured. Under the retained extension of premises doctrine, Narens did not have to prove that she was otherwise engaged in a work-related activity when the injury occurred because "the legislature clearly contemplated and accepted compensability of injuries sustained as a result of work-related risks even though [an] employee was not engaged in the performance of job duties at the time [of the injury]." *Id.*

Lincoln nonetheless argues that the extension of premises doctrine alone does not satisfy all of the elements of section 287.020.3(2), and that the mere fact of being on premises owned or controlled by an employer does not automatically mean that every injury sustained by an employee arose out of and is in the course of employment. As a general proposition, we agree. Even if an employee shows that an injury occurred on

13

premises owned or controlled by an employer, the employee still must show that the injury arose out of and in the course of employment because an accident was the prevailing factor in causing the injury (section 287.020.3(2)(a)), and that the injury did not come from a risk or hazard in which the employee would have been equally exposed to outside of the workplace in normal nonemployment life (section 287.020.3(2)(b)).

*Viley* illustrates this principle. In *Viley*, an employee suffered a knee injury when he slipped and fell in an icy parking lot as he was leaving work. *Viley*, 452 S.W.3d at 681. We held that the injury arose out of and in the course of employment because the employer exercised sufficient control over the parking lot where the employee was injured--satisfying the extended premises doctrine--and because the injury did not come from a risk or hazard in which the employee was equally exposed to outside of the workplace in normal nonemployment life--satisfying section 287.020.3(2)(b).[4] *Id.* at 685-87; *see also Beem*, 478 S.W.3d 461 (employee's injury, which occurred when she slipped on ice in a parking lot while leaving work on a break, deemed to arise out of and in the course of employment because the employer controlled the parking lot and the risk source of the injury was not one in which the employee was equally exposed to outside of the workplace in normal nonemployment life).[5]

Narens's circumstances are indistinguishable from those in *Viley* and *Beem*. She was injured leaving work when she encountered a risk source on property that was owned

---

[4]There was no dispute that the accident was the prevailing factor in causing the employee's injury, satisfying section 287.020.3(2)(a). *Id.* at 685.

[5]There was no dispute that the accident was the prevailing factor in causing the employee's injury, satisfying section 287.020.3(2)(a). *Id.* at *4.

14

and controlled by her employer, with no dispute that her accident was the prevailing factor in causing her injury.

Undaunted, Lincoln cites to *Miller*, *Johme*, and *Pope v. Gateway to W. Harley Davidson*, 404 S.W.3d 315 (Mo. App. E.D. 2012) for the proposition that an employee must be performing some type of work activity if the employee is injured while leaving work in order to receive workers' compensation benefits. Lincoln is mistaken. As we discussed above, compensability in *Miller* and *Johme* hinged on the whether the employee's injury in each case came from a risk or hazard to which the employee would have been equally exposed to outside of the workplace in normal nonemployment life, per section 287.020.3(2)(b), not whether the employee in each case was performing a work activity at the time of the injury. *Miller*, 287 S.W.3d at 674; *Johme*, 366 S.W.3d at 511. "This is why even employees who are specifically performing work duties, as in *Miller,* may not ultimately recover." *Wright*, 2015 WL 6926992, at *4. In *Pope*, the Eastern District discussed the employee's work activities when identifying the risk source of his injury--walking down steps while wearing work boots and carrying a work-related helmet--and affirmed the Commission's award of benefits not simply because the employee was performing a work activity, but because the employee was not equally exposed to the risk source outside of work in normal nonemployment life. *Pope*, 404 S.W.3d at 321.[6] Simply put, Lincoln has not cited any authority for the proposition that

---

[6]Lincoln also cites *Bivins v. St. John's Reg'l Health Ctr.*, 272 S.W.3d 446 (Mo. App. S.D. 2008) and a 2013 decision from the Commission as support for its argument that an employee must be performing work duties in order to receive workers' compensation benefits. Lincoln's reliance on both decisions is misplaced. *Bivins* is not controlling because it was decided before *Miller* and *Johme* and does not conduct the required risk source analysis as required by those cases. If it had, it is likely that the injury would not have satisfied section 287.020.3(2)(b)

15

an employee must be engaged in a work-related activity when injured in order to receive workers' compensation benefits.

The Commission did not err in rejecting Lincoln's argument that Narens's injury was not compensable because her injury occurred when she was leaving work.

Point two is denied.

## Point Three

In its third point, Lincoln argues that the Commission erred by finding that Narens's injury arose out of and in the course of employment because the conclusion was not supported by competent substantial evidence. Lincoln claims that the Commission's award of workers' compensation benefits was against the overwhelming weight of the evidence because photographs of the sidewalk where she was injured do not show a dangerous condition.

In order to bring a "weight of the evidence" challenge a party must "identify (1) a factual proposition needed to sustain the results; (2) identify evidence supporting that position; (3) identify contrary evidence, *subject to the factfinder's credibility determinations, explicit or implicit;* and (4) prove in light of the whole record that the supporting evidence is so non-probative that no reasonable mind could believe the proposition." *Riley*, 404 S.W.3d at 440 (emphasis in original).

---

because the employee fell while walking down a hallway while going to clock in and there was no evidence that there was anything on the floor that caused the fall. *Bivins*, 272 S.W.3d at 448. In any event, *Bivins* does not state that an employee must be engaged in a work-related activity in order to receive workers' compensation benefits. As for the 2013 Commission decision, it applies the law as it existed before the 2005 amendments. In any case, "administrative agency decisions are not binding precedent on Missouri courts." *Gleason*, 455 S.W.3d at 502 n.6.

Lincoln identified the factual proposition needed to sustain the Commission Award as the finding that the sidewalk on which Narens was injured was hazardous. Lincoln identified support for that proposition as Narens's testimony that she was walking on Lincoln's sidewalk with its steep edge when she fell trying to avoid a crowd of students, and Narens's testimony that she saw her supervisor fall on the same sidewalk.[7]

In identifying contrary evidence, Lincoln highlights discrepancies about whether the sidewalk was crowded based on Narens's testimony at the ALJ hearing, a campus report taken after the injury, a police report taken after the injury, and an emergency room report taken after the injury. Lincoln also highlights the photographs of the sidewalk that it admitted into evidence during the ALJ hearing.

Finally, Lincoln argues that in light of the whole record, the supporting evidence of a dangerous condition on the sidewalk is so non-probative as to not support the Commission's Award. We disagree.

While Narens's testimony, the campus injury report, the police injury report, and the emergency room injury report did not all describe the sidewalk on which Narens was injured as crowded, the ALJ nonetheless found that "Narens' testimony was consistent with the [campus] report of injury, the [emergency room] intake information, and the . . . Police Report." "[I]t is the [factfinder's] function to determine credibility of witnesses." *Id.* at 439. And though Lincoln asserts that the photographs it admitted at the ALJ

----

[7]Lincoln argues Narens's testimony that she witnessed her supervisor fall while walking on the same sidewalk should be disregarded as irrelevant. Lincoln ignores, however, that Narens's testimony was admitted by the ALJ over Lincoln's objection and that Lincoln has not challenged that ruling on appeal. "An argument that is not included within the points relied on is not preserved for appeal." *Dep't of Soc. Services v. Peace of Mind Adult Day Care Ctr.*, 377 S.W.3d 631, 642 (Mo. App. W.D. 2012).

hearing do not show a sidewalk with a steep edge, Lincoln ignores that Narens testified that photographs of the sidewalk she admitted into evidence accurately represented the steep drop off on the right side of the sidewalk. The ALJ Award clearly found after weighing this competing evidence that:

> [p]hotos of the location where . . . Narens fell indicate that there is a difference in the height of the ground between the sidewalk and the grassy area next to the sidewalk and that the sidewalk is higher than the grassy area adjacent to it. Moreover, the photos reflect a worn area in the grass adjacent to the sidewalk where . . . Narens fell, which looks like a path that has been cleared by frequent use as a walkway alongside the sidewalk.

"This Court may not substitute its judgment on the evidence . . . ." *Id.* at 439.

The Commission found that "the risk or hazard from which [Narens'] injuries came was traversing the crowded campus sidewalk with its steep drop-off." Competent substantial evidence supported this finding. The Commission did not err when it found that Narens's injury arose out of and in the course of employment because her "work for [Lincoln] daily exposed her to this increased risk" and "that this is a risk or hazard to which [Narens] was not equally exposed [to] in her normal nonemployment life."

Point three is denied.

### Conclusion

We affirm the Commission Award of workers' compensation benefits.

_____
Cynthia L. Martin, Judge

All concur.

18