

# In the Missouri Court of Appeals

## Eastern District

DIVISION ONE

JOHN KOLAR,            )      ED102450
                                 )
      Respondent,        )
                                 )
vs.                              )      Appeal from the Labor and
                                 )      Industrial Relations Commission
FIRST STUDENT, INC.,      )
                                 )
      Appellant,          )
                                 )
and                              )
                                 )
TREASURER OF MISSOURI AS      )
CUSTODIAN OF THE SECOND       )
INJURY FUND,           )
                                 )      Filed: September 22, 2015
      Respondent.        )

First Student ("Employer") and New Hampshire Insurance Company ("Insurer") appeal from the decision of the Labor and Industrial Relations Commission ("the Commission") in favor of John Kolar ("Employee"). Employer asserts four points on appeal. We affirm.

Employee was employed as a bus driver for Employer. When Employee began working for Employer, he weighed almost 400 pounds. However, despite being overweight, there is no evidence he had difficulty doing his job before his injury.

On October 26, 2009, Employee was performing a pre-trip inspection of the bus when he fell in a grassy area and injured himself. Employee was taken by ambulance to the emergency

room where it was discovered he had broken his tibia and fibula in his right leg. Employee underwent surgery the next day to repair the break. Employee spent the next 30 days in the hospital and was then discharged to a rehabilitation facility because he was not allowed to bear weight on his right leg, which prevented him from negotiating the stairs in his home. While Employee was in the hospital he was also diagnosed and began receiving treatment for diabetes.

After three months at the rehabilitation facility, Employee was released, but continued with outpatient therapy. On November 12, 2010, Employee reached maximum medical improvement and no longer needed a cane and could walk the distance required of him to do his job.

Employee testified that while he was at the rehabilitation center, he began having pain in his left leg, which he attributed to putting more weight on that leg while his right leg was injured. Employee's physical therapist noted the complaints of soreness and pain. Dr. Robert Medler, who performed the surgery on Employee's right leg, also noted Employee was complaining of pain in his left knee, although he did not think it was related to the work injury and never examined or treated Employee's left knee. Employee later received cortisone injections on his left knee from a different doctor and currently has a recommendation for a total knee replacement.

In August of 2010, Employee returned to work performing the same general duties he did before his accident. However, he did not take any extra routes after he returned, which resulted in him working fewer hours. Employee attributed his need to cut his hours to leg pain and decreased endurance. Employee performed all duties of a bus driver throughout the 2010-11 and 2011-12 school years.

In June of 2012, Employee did not pass Employer's annual physical due to high blood pressure and high blood sugar. He was also diagnosed with neuropathy in August of 2012, but he testified he began having foot numbness at the end of the 2011-12 school year. At the time of the hearing, Employee had numbness in both his hands and feet. Employee did not take the Department of Transportation ("DOT") physical in 2012 because he could not pass with his high blood pressure, neuropathy, dependence on insulin, and he also believed he could not jump off the bus or carry the weight the DOT required.

At the time of the hearing, Employee complained of deep, aching pain in his right leg, which limits his endurance, balance, and mobility. Employee also stated he had pain in his left knee, and that his weight caused endurance problems.

Dr. David Volarich examined Employee and testified his left knee pain was due to patellofemoral syndrome and patella mistracking from abnormal weight bearing. Dr. Volarich found the October 26, 2009 work accident was the prevailing factor in causing the diagnoses. Dr. Volarich assigned disability ratings of 45% permanent partial disability of the right lower extremity due to the fracture and 35% permanent partial disability of the left knee due to patellofemoral syndrome. The only preexisting disability Dr. Volarich found was morbid obesity, which has not changed significantly since the accident. He rated that disability at 35% permanent partial disability of the body as a whole due to difficulties with agility, endurance, and shortness of breath. While the obesity was a hindrance to employment, Dr. Volarich recommended a few options for weight loss and found the condition not to be permanent.

Dr. Medler testified regarding how he repaired Employee's right leg. Dr. Medler also testified he did not believe the left knee pain was related to the right leg injury. Dr. Medler assigned permanent partial disability of 5% of the right leg below the knee.

3

On April 22, 2010, Employee filed a claim for workers' compensation. The Division of Workers' Compensation ("Division") found Employee had 35% permanent partial disability of the right lower extremity at the level of the knee and 15% permanent partial disability of the left knee. Thus, the Division awarded Employee a total of $45,210.28 in compensation.

Employer appealed to the appeals tribunal. The Administrative Law Judge ("ALJ") found Employee suffered permanent partial disability of 35% of the right lower extremity at the level of the knee and 15% permanent partial disability of the left lower extremity at the level of the knee. The ALJ also awarded a multiplicity factor of 12.5%. Thus, Employer was liable to Employee for $31,500.00. In addition, the ALJ ordered Employer to provide future medical care to remove the hardware in Employee's right leg should it become necessary. Lastly, the ALJ found the Second Injury Fund was liable for only thirty-six weeks of permanent partial disability compensation.

Employee then filed an application for review with the Commission, in which he asserted he was entitled to permanent total disability benefits from the Second Injury Fund, permanent partial disability benefits greater than those issued by the ALJ, and future medical care. Employer also filed an application for review with the Commission, in which it made arguments substantially similar to those it asserts in this appeal. The Commission affirmed and adopted the findings of the ALJ as its own. This appeal follows.

Our review of the Commission's decision is governed by Article V, Section 18, of the Missouri Constitution and Section 287.495, RSMo Cum. Supp. 2013. Scholastic, Inc. v. Viley, 452 S.W.3d 680, 682 (Mo. App. W.D. 2014). Article V, Section 18, provides for judicial review of the Commission's award to determine whether the decision is authorized by law and whether it is supported by competent and substantial evidence upon the whole record. Id. at 682-83.

4

Under Section 287.495, we must affirm unless the Commission acted in excess of its powers, the award was procured by fraud, the facts do not support the award, or insufficient competent evidence exists to warrant the making of the award. Id. at 683. To determine whether there is sufficient competent and substantial evidence to support the award, we examine the evidence in the context of the whole record. Id. We defer to the commission on issues of fact, the credibility of the witnesses, and the weight given to conflicting evidence. Id. We review issues of law de novo. Id. Where, as here, the Commission affirms and incorporates the ALJ's decision in its award, we examine the ALJ's findings as adopted by the Commission. Storie v. Americare Systems, Inc., 304 S.W.3d 254, 257 (Mo. App. S.D. 2010).

In its first point, Employer argues the Commission erred in causally relating the alleged left leg injury to the accident of October 26, 2009 because there is insufficient competent, substantial, credible medical testimony or other evidence in the record to support that portion of the award. We disagree.

Employer contends the testimony of Dr. Volarich was less credible than that of Dr. Medler. Dr. Volarich testified Employee suffered from patellofemoral syndrome and patella mistracking due to abnormal weight bearing after his injury, which prevented him from bearing weight on his right lower extremity. Dr. Volarich admitted these symptoms could be related to Employee's morbid obesity, but stated, if that were the case, he would expect to see them on the right knee as well, but it was completely normal. Moreover, Dr. Volarich testified Employee did not have any problems with his joints before the October 26, 2009 injury, despite being morbidly obese then too.

5

Dr. Medler testified the left knee injury was unrelated to the October 26, 2009 injury. Dr. Medler testified a patient could experience temporary discomfort as complained of by Employee, but once weight-bearing return to normal, the pain would cease.

Employer notes Dr. Medler is an orthopedic surgeon, who actually treated Employee, while, on the other hand, Dr. Volarich is not an orthopedic surgeon and did not treat Employee. Thus, Employer contends Dr. Medler was more credible than Dr. Volarich.

As noted above, we defer to the commission on issues of fact, the credibility of the witnesses, and the weight given to conflicting evidence. To choose between two conflicting medical theories is a determination particularly for the Commission because the weighing of expert testimony on matters relating to medical causation lies within the Commission's sole discretion and cannot be reviewed by this Court. Proffer v. Federal Mogul Corp., 341 S.W.3d 184, 187 (Mo. App. S.D. 2011).

The Commission stated it found Dr. Volarich's opinion to be more persuasive because he examined the left knee and carefully considered the facts before reaching his conclusion. Further, Dr. Volarich gave a reasonable explanation for his diagnosis and cited objective evidence in support. On the other hand, the Commission noted Dr. Medler did not even examine the left knee and failed to consider that the left leg injury could be causally related to the October 26, 2009 injury. Lastly, the Commission noted Employee's left knee had not returned to normal with the improvement of Employee's right leg injury as Dr. Medler had predicted.

Thus, the Commission's award, finding Dr. Volarich's determination that Employee's left knee injuries were causally related to the October 26, 2009 injury to be more credible than Dr. Medler's findings, was supported by sufficient competent and substantial evidence and was not clearly against the overwhelming weight of the evidence. Point denied.

6

In its second point, Employer argues the Commission erred in the extent of the award of permanent partial disability benefits against Employer/Insurer because Employee testified to only minimal functional limitations in the right leg, in that the overwhelming weight of the credible, substantial, and objective evidence in the record does not support the extent of the award. We disagree.

Employer is essentially arguing that Dr. Medler's opinion as to the extent of permanent partial disability is more persuasive than Dr. Volarich's. Dr. Volarich testified that Employee suffered 45% permanent partial disability to the right lower extremity at the level of the knee, as well as 35% permanent partial disability to the left lower extremity at the knee, and that the work event of October 26, 2009 was the primary or prevailing factor in causing both knee injuries and the corresponding rates of permanent partial disability. On the other hand. Dr. Medler assigned 5% permanent partial disability to the right leg below the knee, but did not find the left leg was disabled at all.

The record shows Employee complained of deep, aching pain in his right leg, especially when the weather was cold and wet, but also on normal days. Further, he stated his right leg was painful with weight-bearing and limited his endurance. Employee noted he had trouble going up stairs and experienced pain going down stairs. Employee noted he had to take one stair at a time. Moreover, he also reported balance issues due to left knee pain in combination with right leg pain.

Again, Employer is asking us to substitute our judgment of the credibility of the witnesses for that of the Commission. However, we are bound to accept the Commission's credibility determinations, which are supported by sufficient competent and substantial evidence in the record.

7

Therefore, we find the Commission did not err in the extent of the award of permanent partial disability benefits against Employer. Point denied.

In its third point, Employer argues the Commission erred in affirming and adopting the ALJ's award of a "multiplicity factor" because, although the Commission previously enjoyed broad discretion awarding disability benefits, the notion of "multiplicity" is absent from the statutory framework of the version of the Missouri Workers' Compensation Act in effect both now and at the time of Employee's injury, and therefore violated the strict construction and impartial framework of Section 287.800. We disagree.

As noted above, the Commission awarded a multiplicity factor of 12.5% to address cumulative disabilities. In doing so, the Commission cites cases from before 2005, when the legislature determined the provisions of the Workers' Compensation Act were to be strictly construed. Employer argues there is no statutory authority for a multiplicity factor, and, as a result, it cannot be presumed that a multiplicity factor is permissible.

A multiplicity factor is a special or additional allowance for cumulative disabilities resulting from a multiplicity of injuries. Sharp v. New Mac Elec. Co-op., 92 S.W.3d 351, 354 (Mo. App. S.D. 2003). The Commission has the discretion to include a multiplicity factor in assessing cumulative disabilities but is not required to do so. Id.

In support of its application of a multiplicity factor, the Commission cites to Eagle Chambliss v. Lutheran Medical Center, 822 S.W.2d 926, 932 (Mo. App. E.D. 1991) and Sharp v. New Mac Elec. Co-op, 92 S.W.3d 351, 354 (Mo. App. S.D. 2003). Both of these cases have been overruled by Hampton v. Big Boy Steel Erection, 121 S.W.3d 220 (Mo. banc 2003), but they were not overruled based on their use of a multiplicity factor. The case law demonstrates

8

multiplicity factors were permitted before the 2005 amendments, and the amendments did not mandate any change with respect to multiplicity factors.

In 2005, Section 287.800 was amended. Previous to the amendment, it provided: "All of the provisions of this chapter shall be liberally construed with a view to the public welfare . . .." The current version, however, provides: "[a]dministrative law judges, associate administrative law judges, legal advisors, the labor and industrial relations commission, the division of workers' compensation, and any reviewing courts shall construe the provisions of this chapter strictly." Section 287.800 Cum. Supp. 2008.

When the legislature amends a statute, it is presumed that its intent was to bring about some change in the existing law. Hogan v. Board of Police Com'rs of Kansas City, 337 S.W.3d 124, 130 (Mo. App. W.D. 2011) (quoting State v. Joos, 218 S.W.3d 543, 548-49 (Mo. App. S.D.2007)). The legislature is presumed to have acted with a full awareness and complete knowledge of the present state of the law, including judicial and legislative precedent. Id. This Court should never construe a statute in a manner that would moot the legislative changes, because the legislature is never presumed to have committed a useless act. Id. To amend a statute and accomplish nothing from the amendment would be a meaningless act. Id.

However, we note neither the original nor the amended version of the Workers' Compensation Act mentions the use of a multiplicity factor. Instead, that mechanism was developed by case law. We find allowing multiplicity factors to continue to be used is not inconsistent with strict construction of the Workers' Compensation Act. Had the legislature intended to discontinue their use, it could have done so explicitly in the amended statute. Because it did not do so, we presume it did not intend to prohibit their use.

9

Therefore, the Commission did not err in affirming and adopting the ALJ's award, which made use of a multiplicity factor. Point denied.

In its fourth point, Employer argues the Commission erred in awarding future medical care to Employee because Employee failed to establish, through competent medical evidence, that there is a reasonable probability that he will require additional treatment in the future. We disagree.

To be entitled to future medical expense benefits, an employee need not show conclusive evidence of a need for future medical treatment. Greer v. Sysco Food Services, 2014 WL 6464473, (Mo. App. E.D. 2014). Nor is an employee required to show evidence of the specific nature of the treatment needed. Id. Instead, an employee need only demonstrate a reasonable probability that future medical treatment is needed by reason of his work-related injury. Id. Future care to relieve an employee's pain should not be denied simply because he may have achieved maximum medical improvement. Id.

The Commission ordered Employer to provide future medical care, but only to remove the hardware in Employee's right leg should it become necessary. Employer contends Dr. Volarich did not see any indication that the hardware used to repair Employee's right leg would need to be removed in the future, but acknowledged such a need could arise. Dr. Medler stated that "[e]verybody has the option to get their hardware removed if it's painful, but most people don't get the hardware taken out." Further, he testified the time since Employee's injury tended to indicate he would not have the hardware removed.

However, we note there is substantial evidence in the record that Employee was still experiencing pain in his right leg. If, in the future, Employee did need to have the hardware removed, the Commission found such care would flow from the October 26, 2009 injury and

would cure and relieve the effects of the injury. Thus, we find there was competent and substantial evidence to support the Commission's award of future medical care only to remove the hardware in Employee's right leg should it become necessary.

Therefore, the Commission did not err in awarding future medical care to Employee. Point denied.

The decision of the Commission is affirmed.

ROBERT G. DOWD, JR., Presiding Judge

Mary K. Hoff, J. and
Roy L. Richter, J., concur.

11