

# In the Missouri Court of Appeals
# Eastern District

DIVISION ONE

S.M.W., ) No. ED107729
)
    Respondent, ) Appeal from the Circuit Court
) of the City of St. Louis
vs. )
) Honorable Barbara Peebles
V.M., )
)
    Appellant. ) FILED: March 10, 2020

V.M. ("Appellant") appeals from the judgment of the Circuit Court of the City of St. Louis, granting S.M.W. ("Guardian") a Full Order of Protection for a minor child ("Child"). S.M.W. petitioned for four Full Orders of Protection, two for herself against Appellant and G.M., a co-party with Appellant at the trial court, and two for Child against Appellant and G.M. The trial court granted the Orders of Protection against Appellant and G.M. for stalking Child, and denied the Orders of Protection against Appellant and G.M. for stalking Guardian on February 7, 2019. Only one of these orders is at issue in this case—the Full Order of Protection against Appellant for stalking Child.[1] We reverse the Order of Protection against Appellant for stalking Child.

---

[1] The protection order against G.M. is not before this Court on appeal. Thus, we will not decide whether that order was appropriate.

# I. Background

Guardian is the aunt and legal guardian of Child, whose mother died when Child was four. Child was thirteen years old when these events transpired. Guardian's godmother, G.M., lives across the street from Guardian and Child. G.M. has a grandmother-granddaughter style relationship with Appellant, and Appellant is frequently at G.M.'s house. G.M. runs a daycare out of her house. Appellant had knee surgery in September 2018 and spent much of her recovery at G.M.'s house. Child has no blood relationship with G.M. or Appellant.

Based on the record, Guardian was concerned about two incidents that led her to file for the protective order at issue. The first incident occurred in September 2018. However, the record does not make clear what happened during this incident. Guardian testified that Child was working for G.M.'s in-home daycare for a time, but Guardian wanted Child to end her involvement when some allegations were made about G.M.'s nephew. Guardian testified that G.M. kept asking if Child could come live with G.M. and help with the daycare, but Guardian kept saying no. Guardian said Child kept running back, however.

The second incident was the primary reason for Guardian's request for the initial order. Child disappeared from her home and Guardian as well as school from November 20, 2018, to November 30, 2018. Multiple incidents occurred throughout the ten-day time period Child was gone that led to Guardian's concern about Appellant and G.M, including alleged lies, threats, and cutting off Child's hair in an attempt to hide Child.

Guardian suspected that Child was at G.M.'s house on or about November 23, 2018. The police were called to help resolve this situation. Guardian alleged that G.M. and Appellant were increasingly aggressive and argumentative with both Guardian and the police and that G.M. and Appellant were trying to bite and fight Guardian. Further, Guardian alleged that G.M. and Appellant waived a gun at Child and Guardian. Guardian testified that they were in fear of harm

2

if the order of protection was denied. She said Child was "terrified" and that she was traumatized and now doing therapy. Guardian said she lives across the street and was worried "if something happens."

On December 4, 2018, Guardian filed a petition for a Full Order of Protection for Child against G.M. and Appellant, and a Full Order of Protection for herself, against G.M. and Appellant.

However, Appellant and G.M. both argued on the record they do not own a gun, and also, that G.M. consented to let the police go into G.M.'s house to obtain Child. Instead, G.M. called Child to come out, which she did. However, Child promptly ran away again. Appellant denied any attempt to bite or begin an altercation with Guardian. Appellant also offered evidence of her own medical condition, walking on crutches since she was recovering from knee surgery, to support the argument that she was not aggressive. Finally, G.M. and Appellant both testified to Guardian acting irrational that day, "driving crazy up and down the street." Appellant alleged that the police were dismissive of Guardian because of this irrational behavior. When asked how Child came to G.M. that day, G.M. responded that she found her and wanted to contact Guardian.

Additionally, G.M. admitted that Child spent two nights at G.M.'s house during the ten-day period, and testified that Child arrived on the night of November 23, 2018, asked to stay, and left in the morning. According to G.M., when she told Child to go back to Guardian, Child threatened suicide instead of returning to Guardian. As a result, G.M. allowed her to stay the night and then Child left in the morning. Then, on November 27, 2018, Child showed up at G.M.'s house in the middle of the night again. G.M. and Appellant testified that Child told them she chose to run away because Guardian was abusive. Appellant testified that she called Child Protective Services ("CPS"), which informed her that for the safety of the child, Appellant

3

should house the child overnight.  Appellant stated she did not call Guardian because she did not have Guardian's number.  The testimony is the only evidence in the record regarding this CPS call.

The record does not reflect how or why Child eventually returned to Guardian.  When questioned by the *Guardian Ad Litem*, Guardian mentioned potential investigations by CPS into the behaviors of Appellant and G.M., but said "I can't talk about it."  When the court asked for clarification, Guardian simply responded that charges were "possibly" pending and did not clarify what charges were being considered, who they were being considered against, or when they had been filed.

Although there was strong disagreement between the parties over what exactly transpired and the trial court stated it was "not convinced of what happened during that ten-day period," on February 7, 2019, the trial court granted the petitions for the two orders protecting Child and denied the petitions for the two orders protecting Guardian.[2]  In doing so, the trial court explained, "I do think that you ladies had some contact with that child that was inappropriate, and should have been spearheaded by the mother figure, the guardian in this case.  And I don't think you have any connection to that child whatsoever, and you need to stay away from that child."

Appellant originally filed this appeal *pro se* on March 26, 2019.  This Court originally dismissed the appeal for not being complete. Appellant then retained counsel and refiled this appeal on April 10, 2019.

---

[2] The order was a one-year order that expired on February 7, 2020. Even though it has expired, we decide this case with a written opinion, considering Missouri precedent:

> We are also mindful of the stigma that can attach to a person who is adjudicated a "stalker." This stigma does not disappear simply because the order has expired. Such person may be forced, in an application for certain kinds of employment or in an application for licensure, to disclose the order of protection

Todd v. Plack, 318 S.W.3d 809, 810 (Mo. App. W.D 2010); citing Stiers v. Bernicky, 174 S.W.3d 551, 553 (Mo.App. W.D. 2005).

## II. Discussion

Appellant raises one point on appeal, alleging the trial court erred in entering judgment for a Full Order of Protection for Child because the trial court's determination that Appellant stalked Child was not supported by substantial evidence, and that the evidence adduced at trial did not substantially satisfy the statutory requirements for a protective order per Section 455.516.[3]

A.  Standard of Review

Appeals from a court-tried civil case are governed by Murphy v. Carron, 536 S.W.2d 30 (Mo. banc 1976).  The trial court's judgment will be upheld unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.  Schwalm v. Schwalm, 217 S.W.3d 335 (Mo. App. E.D. 2007) (citing Murphy, 536 S.W.2d at 32).  We defer to the trial court's determinations of credibility and consider facts and inferences supporting the judgment.  Id. (citing Vinson v. Adams, 192 S.W.3d 492, 494 (Mo. App. E.D. 2006)).

B.  Analysis

An order of protection may be entered in favor of a child "who has been subject to domestic violence by a present or former household member or sexual assault or stalking by any person. . . ."  Section 455.505(1); Hanger v. Dawson, 584 S.W.3d 798, 802-03 (Mo. App. W.D. 2019).  Since Section 455.501's repeal in 2011, definitions applicable to child protection orders are now contained in Section 455.010.  S.N.L. v. A.B., 550 S.W.3d 514, 516 (Mo. App. E.D. 2017).  Stalking occurs when "any person purposely engages in an unwanted course of conduct that causes alarm to another person, or a person who resides together in the same household with the person seeking the order of protection when it is reasonable in that person's situation to have

---

[3] Appellant's brief cites Section 455.501(10), RSMo Cum.Supp. 1999.  This statute was repealed, effective August 28, 2011, and supplanted by Section 455.516.

5

been alarmed by the conduct." Section 455.010(14). A parent's reasonable alarm is sufficient to trigger the protections of the Child Protection Orders Act ("CPOA"), Sections 455.500 to 455.538. S.N.L., 550 S.W.3d 514 at 518.

Alarm, as used in the stalking definition, is "to cause fear of danger of physical harm." Section 455.010(14)(a). Alarm has a subjective and objective component. K.L.M. v. B.A.G., 532 S.W.3d 706, 708-09 (Mo. App. E.D. 2017). A person must subjectively fear danger of physical harm. Moreover, a reasonable person in the situation would have to fear a danger of physical harm. Id. To meet these definitions, a plaintiff is required to do more than simply assert a bare answer of "yes" when asked if he or she was alarmed. Lawyer v. Fino, 459 S.W.3d 528, 533 (Mo. App. S.D. 2015). Appellate courts will reverse orders of protection based on this definition where there was no evidence of overt threats of physical harm and no evidence of physical confrontations. Id.; D.A.T. v. M.A.T., 413 S.W.3d 665, 668-69 (Mo. App. E.D. 2013); Schwalm, 217 S.W.3d at 337 (Mo. App. E.D. 2007); Clark v. Wuebbeling, 217 S.W.3d 352, 354 (Mo. App. E.D. 2007).

A course of conduct is "a pattern of conduct composed of two or more acts over a period of time, however short, that serves no legitimate purpose." Section 455.010(14)(b). Unwanted courses of conduct include behaviors such as: following the other person, unwanted communication, or unwanted contact. Section 455.010(14)(b).

This case hinges on whether there is enough evidence on the record to support a finding that stalking occurred by Appellant against Child and whether the course of conduct by Appellant was sufficient to create alarm for Guardian that Child may suffer harm.

*Stalking*

Appellant first argues the trial court erred in granting the petition with an incomplete record. The record of the trial court does have three "(inaudible)" moments. In cases where

6

there is an incomplete record on appeal because no record was made of the trial court proceeding, we must reverse the judgment of the trial court and remand so that a proper record can be made. A.L.C. v. D.A.L., 421 S.W.3d 569, 570 (Mo. App. E.D. 2014) (citing Section 512.180(2)). However, the present case does not present an absent record, only a record with a few inaudible moments. Appellant admits that the judge appears to understand statements that are not clear in the record and provides no evidence of this to support grounds for a new trial. These moments do not prevent a clear determination of what was being asked or substantially detract from the testimony provided.

Next, Appellant argues that Guardian failed to provide sufficient evidence to justify the granting of a protective order. We agree. In order to show stalking and justify a protective order, there must be clear and convincing evidence of alarm. Appellate courts have consistently overturned protective orders that did not have a showing of overt threats of physical harm or evidence of physical confrontations. Lawyer, 459 S.W.3d at 533.

In the present case, with two *pro se* parties in the court, the trial court took it upon itself to lead and direct the questioning to determine if an order of protection was justified. However, we find insufficient evidence or testimony on the record to justify the order. During her testimony, Guardian made several references to vague feelings and emotions, e.g. "she don't even know me and was trying to harm me" and "they are actually stalking, they're doing everything to their ability to just get to my niece," but could not point to any specifics of how she anticipated harm in the future. When asked point blank for "any particular threats of harm to you," Guardian was able to respond only with a conclusory, "Yes," and that Appellant was "doing the most." Without details or specifics, a simple response of "yes" is not enough to justify a protective order. Lawyer, 459 S.W.3d at 533. Guardian argued that Appellant flashed a gun, but both Appellant and G.M. denied owning a gun. Even as we consider the facts and

7

inferences in support of the judgment based on our standard of review, without any further questioning or testimony about whether there was a weapon around Child, what danger was posed to Child, or what anticipated future harm could come to Child, there is not enough evidence to justify an "overt threat" to Child or proof of stalking. This Court has emphasized the importance of providing testimony specifically addressing a plaintiff's fear of physical harm. Id.

The best evidence to support an objective or subjective finding of alarm came during questioning of Guardian by the *Guardian Ad Litem*, but Guardian soon contradicted that evidence supporting such a finding. When Guardian was asked what her fear would be if the order was denied, she responded, "Harm, harm." Guardian's conclusory statements expressing fear were unsupported by additional testimony and failed to specifically mention any reason to fear physical harm. See K.M.C. v. M.W.M., 518 S.W.3d 273, 281-82 (Mo. App. E.D 2017) (Richter, J., dissenting) (citing Lawyer, 459 S.W.3d at 533). Guardian then stated, "I'm trying to protect myself as well as them, I don't want to end up hurting anybody. And I also need my niece not to be in harm's way. . . ." The record before us seems to imply that Guardian was as likely to escalate the situation to physical violence as Appellant, further negating Guardian's own subjective sense of alarm for Child.

The only evidence of any physical harm from either party toward Child was allegations of abuse made by Child against Guardian, which were reported to CPS by Appellant. Guardian at one point accused Appellant of cutting Child's hair "so no one could recognize her" and lying about Child's whereabouts during the time Child was missing. However, Appellant denied this accusation and stated she was merely twisting Child's hair to avoid bullying at school. There was no further questioning or testimony about this incident to decide whether any physical harm actually occurred. At best, Guardian seems to be using the Adult Abuse Act and the Child Protective Order Act as a "panacea for minor arguments that frequently occur between

8

neighbors," a use consistently overturned and warned against by the Missouri courts. <u>K.M.C. v. M.W.M.</u>, 518 S.W.3d 273, 279 (Mo. App. E.D. 2017) (quoting <u>Wallace v. Van Pelt</u>, 969 S.W.2d 380, 386 (Mo. App. W.D 1998)). At worst, the only evidence of actual imminent harm seems to be the above threat made by Guardian against Appellant. There is not sufficient evidence to support the inference that an objective observer would have seen Appellant had any intentions to harm Child, or that Guardian had a reason to believe Appellant would harm Child.

Additionally, the statutory changes made to the CPOA do not distinguish between the definitions of alarm or stalking for an Adult Order of Protection and a Child Order of Protection. For both, the standard of stalking and alarm are defined by Section 455.010(14). All of Guardian's testimony was specific to threats allegedly made by Appellant, directed at Guardian, not Child. Guardian never alleged that Appellant or G.M. hurt Child except for the alleged haircut. Even assuming *arguendo* this occurred, a haircut alone would not constitute harm. Rather, the allegations against Appellant are merely that G.M. provided Child shelter against the desires of Guardian while Appellant was in G.M.'s house. Although this may constitute parental meddling, it does not escalate to the point of alarm and stalking, which is required to support the granting of a protective order. Further, the fact that Guardian's request for an adult protective order against Appellant was denied supports the idea that the trial court did not find a threat of harm between Appellant and Guardian. To deny the adult order and then to grant the order for Child with less factual evidence of harm erroneously applies the law as set out by Section 455.010 and the CPOA.

Finally, the trial court made its determination without a clear picture of what happened. The court conceded it was "certainly not convinced of what happened during that ten-day period." The decision is based on contact that was "inappropriate, [and that] should have been spearheaded by the mother figure." However, the standard for granting a protective order for

9

stalking is not inappropriate meddling in the affairs of child rearing. Rather, the standard is a strict determination of fear of physical harm. Although the statute does refer to "course of conduct" as behavior that serves no legitimate purpose, as defined by Section 455.010(14)(b), it must be coupled with alarm as defined by Section 455.010(14)(a). Absent alarm, a course of conduct with no legitimate purpose alone is not sufficient to meet the statutory definition of stalking. In a situation where the trial court assumes the burden of directing questions to *pro se* litigants, the correct questions and detailed responses still must be present to create a clear record of what occurred in order to meet the statutory elements of a law with substantial evidence of proof.

Therefore, because there was not substantial evidence to support a finding of alarm or stalking, Appellant's point is granted.

### III. Conclusion

We reverse the Child Order of Protection against Appellant.

_____
ROY L. RICHTER, Judge

Robert M. Clayton III, P.J., concurs.
Robert G. Dowd, Jr., J., concurs.

10